UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN– SOUTHERN DIVISION

KENNETH BOYER,
Individually, and on behalf of others similarly situated,

      Plaintiff,

v.                                                                          Case No.
                                                                            Hon.
                                                                            **CLASS ACTION COMPLAINT**

DIVERSIFIED CONSULTANTS, INC.,
MAVIS PYE,
LIVEVOX, INC.

      Defendants.

## COMPLAINT & JURY DEMAND

     Plaintiff, Kenneth Boyer, an individual, on behalf of himself and all others similarly situated, by and through his undersigned attorneys, sues Defendants, and alleges:

## INTRODUCTION

1.    This class action involves the illegal placement of calls by Diversified Consultants, Inc. ("DCI") and by and through its affiliate Livevox,  to hundreds if not thousands of cell phone subscribers using automatic telephone dialing system or artificial or prerecorded messages.  DCI and Livevox use its automated dialers and systems in a predatory way to repeatedly and continuously call consumers to collect accounts.  In the course of these collections, it often wrongly contacts individuals who owe no money or never consented to receiving calls.

2.    In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, to regulate the explosive growth of the telemarketing industry. In so doing, Congress  recognized that "unrestricted telemarketing . . . can be an intrusive invasion of

privacy . . ." 47 U.S.C. §227, Congressional Statement of Findings #5. In 2003, the

Federal Communications Commission issued rules clarifying the prohibition on

automated and prerecorded calls to cell phones.

3.     The guiding principal of the TCPA is the need to protect the consumer from automated or

prerecorded telephone calls which as the FCC noted, as found by Congress,  were a

"greater nuisance and invasion of privacy than live solicitation calls, and that such calls

can be costly and inconvenient."  See *In the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1999,* F.C.C. 07-232, 23

F.C.C.R. 559 (Dec. 28, 2007; released Jan. 4, 2008).

4.     A predictive dialer constitutes an automatic telephone dialing system within the meaning

of the TCPA.  *See In the Matter of Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991,* F.C.C. 07-232, 23 F.C.C. R. 559, 566 ¶ 12 & 13 (Dec.

28, 2007) released Jan. 4, 2008).  In that Ruling, the Federal Communications

Commission ("FCC") for a second time rejected the position that a predictive dialer only

meets the definition of an ATDS when it randomly or sequentially generates numbers.

Rather, it stated "In this Declaratory Ruling, we affirm that a predictive dialer constitutes

an automatic telephone system and is subject to the TCPA's restrictions on the use of

autodialers."  23 F.C.C. R. 559, 566 ¶ 12.

5.     Dead air calls are the mark of predictive dialers.   As stated by the FCC, "The record

before us revealed that consumers often face "dead air" calls and repeated hang-ups

resulting from the use of predictive dialers."  Rules and Regulations Implementing the

Telephone Consumer Protection Act of 1991, 70 Fed. Reg. 19330, 19334  (April 13,

2005).

6.    Although the collection industry has argued to the contrary, this prohibition is not limited to telemarketing calls; debt-collection calls are covered. *Brown v. Hosto & Buchan, PLLC*, 748 F.Supp.2d 847 (W.D.Tenn. 2010); *In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 F.C.C.R. 559, 561 (2008) ("ACA Declaratory Ruling"); *Brown v. Enterprise Recovery Systems, Inc.*, No. 02-11-00436-CV, 2013 WL 4506582, *5 (Tex.App. Aug. 22, 2013).

7.    In 2012 and  2013 DCI, along with and through its affiliate Livevox, used its automated dialers to bombard Mr. Boyer with collection calls to his cell phone to collect on a bill allegedly owed to Sprint.  In many of those calls, DCI used artificial or prerecorded messages.   The use of this technology in the placement of calls to Mr. Boyer was in violation of the TCPA.   This case is filed on behalf of Mr. Boyer and a class of similarly situated individuals for damages and to stop Defendants'  practice of placing cell phone calls to non debtors and other individuals who have not consented to be contacted in this manner.

## Jurisdiction

8.    This Court has jurisdiction under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq., and 28 U.S.C. § 1331 and § 1337.

9.    This Court may exercise supplemental jurisdiction over the state law claims arising out of the same nucleus of operative facts.

## Venue

10.    The transactions and occurrences giving rise to this action occurred in Genesee County, Michigan.

11.     Venue is proper in the Eastern District of Michigan.

## Parties

12.     The Plaintiff is Kenneth Boyer ("Mr. Boyer"), a natural person and resident of Genesee County, Michigan.

13.     The Defendants to this lawsuit are:

    a.    Diversified Consultants, Inc. ("DCI"), a foreign corporation doing business in Michigan, with its principal place of business located in Jacksonville, Florida.

    b.    Mavis Pye, the Automatic Dial Announcing Device Compliance Officer for DCI.

    c.    LiveVox, Inc. ("Livevox"), a foreign corporation doing business in Michigan, with its principal place of business in California.

## General Allegations

14.     Mr. Boyer maintains a cellular phone via a "cellular telephone service" as described in 47 U.S.C. § 227(b)(1)(A)(iii).

15.     Mr. Boyer maintains his cellular phone for his own personal convenience, to maintain contact with family and friends, and for emergency purposes.

16.     DCI is a debt collector that specializes in collecting outstanding telecommunication and cell phone bills.

17.     Mavis Pye is DCI's Automatic Dial Announcing Device Compliance Officer for DCI. She is involved in creating, implementing, modifying and/or supervising DCI's policy or procedure relating to contacting consumers using an automatic telephone system or using an artificial or prerecorded voice.

18.     DCI partners with LiveVox in creating and developing its automated dialing collection campaigns.

19.     LiveVox provides the automated dialing software systems for DCI.

20.     LiveVox also provides Interactive Voice Response ("IVR") systems (LiveVox website IVR

        page: http://www.livevox.com/applications/ivr/ dowloaded April 8, 2014). IVR systems use

        pre-recorded voices to guide people through various menus in a telephone communication

        system.   On information and belief, DCI utilizes the LiveVox IVR technology for its

        prerecorded voice messaging communications.

21.     The LiveVox system used by DCI is an ATDS. *Lardner v. Diversified Consultants, Inc.*,

        2014 WL 1778960 *5 (S.D.Fla. May 1, 2014).

**Allegations Related to the Collections Against Mr. Boyer**

22.     Sometime in 2012, Mr. Boyer switched his cell phone carrier from Sprint to Straight Talk

        Wireless after being informed by Sprint that his contract had expired.

23.     Mr. Boyer registered his new cell phone number on the Federal Do Not Call List.

24.     Subsequently, Sprint billed Mr. Boyer for an "early termination fee," claiming the contract

        was 2 month shy of the contract expiration date.

25.     Sprint issued a final bill to Mr. Boyer in the approximate amount of $180.00.

26.     But for Sprint's representations that the contract had expired, Mr. Boyer would not have

        cancelled coverage.

27.     Mr. Boyer disputed the debt and refused to pay it.

28.     Eventually, Sprint assigned, sold, placed, or otherwise transferred Mr. Boyer's alleged debt

        to DCI for collection in December 2012.

29.     Beginning in December 2012 DCI began placing calls to Mr. Boyer's new cell phone

        number through his new cell phone carrier.

30.     In the period between December 19, 2012 and January 11, 2013, DCI dialed, or initiated, at

least 20 calls to Mr. Boyer's new cellular phone number.

31.   On some days, DCI called Mr. Boyer up to three times.

32.   DCI's calls were in violation of the proscription against using a harassing, oppressive or abusive method of collection, in M.C.L. § 339.915(n) and/or M.C.L § 445.252(n),  which prohibits calling a person repeatedly, and/or continuously.

33.   Mr. Boyer made repeated requests to DCI to stop calling him on his cellular phone.

34.   Mr. Boyer disputed the debt to DCI.

35.   In December 2012, Mr. Boyer spoke to DCI employee "Charlene" who informed him that she had mailed him a validation letter, but refused to provide the address to which the letter was sent.

36.   Despite Mr. Boyer's dispute of the Sprint debt, he offered to pay DCI $10.00 per month to resolve the collection action.

37.   During this conversation, "Charlene" stated that Mr. Boyer was refusing to the pay the alleged debt, and falsely accused Mr. Boyer of breaking his promise to pay, which was a false and abusive communication, in violation of M.C.L. § 339.915(e), (f) and (n) and/or M.C.L § 445.252(e), (f) and (n).

38.   In other calls, DCI employees threatened Mr. Boyer– including threats to report the debt to the credit reporting agencies

39.   DCI employees used rude, and disrespectful language,  in violation of M.C.L. § 339.915(e), (f) and (n) and/or M.C.L § 445.252(e), (f) and (n).

40.   The calls by DCI to Mr. Boyer's cell phone used a pre-recorded message

41.   The text of the recording was as the same in each call and indicated that DCI was calling about and "important business message."  It further identified that DCI was calling for

"Kenneth Boyer" and that he should "press 1" to be connected to an agent.

42.   The use of prerecorded and or artificial voice messages evidences that these calls were placed by DCI to Mr. Boyer's cell phone using an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(a)(1).

43.   In many instances after the message was played, a DCI agent came on the line.

44.   In other instances Mr. Boyer was met by a long period of silence or "dead air" after the message was played without a representative ever picking up the call.

45.   Mr. Boyer never gave DCI his cellular phone number, nor did he consent to receiving calls on that number.

46.   DCI uses its ATDS and prerecorded messages to contact a large number of people to collect, or attempt to collect, debts.

47.   In promoting its services, DCI advertises that it uses "the most cutting edge technology the industry has to offer."  (DCI website "Our Story" page, http://www.dcicollect.com/ about/dci-about.html; downloaded April 7, 2014).

48.   This technology allows DCI to automatically dial thousands of telephone numbers at extremely low cost, and schedule a pattern of repeated telephone calls at certain dates and times.

49.   Livevox was involved in creating and/or implementing DCI's procedure relating to contacting consumers using an automatic telephone system or using an artificial or prerecorded voice.

50.   DCI failed to vet, or verify, that the person(s) it called with its ATDS and prerecorded messages were in fact persons who had expressly consented to being contacted by these means.

51.     The placement of unconsented calls to Mr. Boyer's cell phone using the prohibited technology under the TCPA, constitutes a harassing, oppressive or abusive method of collection, in violation of M.C.L. § 339.915(n) and/or M.C.L § 445.252(n).

52.     DCI has been the target of numerous complaints concerning its ATDS and prerecorded messages by person who did not consent to be contacted via these means.

53.     The calls from DCI caused Mr. Boyer numerous interruptions and disruptions.

54.     As a result of DCI's wrongful conduct, Mr. Boyer has suffered damages.

<u>**Class Definition and Class Issues**</u>

55.     Mr. Boyer brings this action on behalf of himself and a class of all other persons similarly situated, pursuant to Fed.R.Civ.P. 23.

56.     Mr. Boyer proposes to represent the following classes:

    a.     Autodialer Class:

        i.     All persons residing in the territorial United States, excluding the Court and its staff,

        ii.     who subscribed to a cellular telephone to which DCI  dialed, or initiated, a call using an ATDS in the four years preceding the filing of this complaint,

        iii.     who did not provide his or her phone number to DCI or the creditor as an authorized contact number for the alleged debt on which DCI attempted to collect.

    b.     Prerecorded or Artificial Voice Message Class:

        i.     All persons residing in the territorial United States, excluding the Court and its staff,

        ii.     who subscribed to a cellular telephone to which LiveVox delivered, or

conveyed, a prerecorded or artificial voice message  in the four years preceding the filing of this complaint,

iii.    who did not provide his or her phone number to DCI  or the creditor as an authorized contact number for the alleged debt on which DCI attempted to collect.

57.   Based upon internet complaints to, or regarding, DCI, it appears that the proposed class includes several hundred members.

58.   The class is numerous, and contains members from all over the United States, making joinder of all plaintiffs impracticable.

59.   This complaint seeks monetary damages under Fed.R.CIv.P. 23(b)(3).

60.   The class claims present common questions of law and fact, including whether:

a.     DCI used an autodialer to collect its debts;

b.     DCI used prerecorded, or artificial voice, message to collect its debts;

c.     DCI made non-emergency calls to the cellular phones of Mr. Boyer and the class members using an ATDS, or a prerecorded/artificial voice message;

d.     DCI had the prior express consent to initiate calls to the cellular phones of Mr. Boyer and the class members using an ATDS or prerecorded/artificial voice message.;

e.     DCI's conduct was knowing and/or willful.

61.   These common questions predominate over any questions involving only individual class members.

62.   Mr. Boyer's claims are typical of the class he seeks to represent, and involve the same legal and remedial theories.

63.   Mr. Boyer will fairly and adequately protect the interest of the class.  Specifically,

    a.     Mr. Boyer has no adverse interest to the class.

    b.     Mr. Boyer has retained counsel who is experienced and handling class actions and litigation under the TCPA and FDCPA.

    c.     Mr. Boyer has suffered similar injuries to the member of the classes he seeks to represent through this action.

    d.     Neither Mr. Boyer, nor his counsel, have any interests which may cause them to not vigorously pursue this action.

64.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

    a.     No individual class member could be expected to hold a strong interest in individually controlling the prosecution of separate claims against Defendants because the claim amounts are likely small, and involve statutory damages under the TCPA and FDCPA.

    b.     Management of these claims will likely present few difficulties because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

**COUNT I– Class Claims DCI, Pye, and Livevox**
**Telephone Consumer Protection Act of 1991 and 47 C.F.R. 16.1200, et seq.**

65.    Mr. Boyer incorporates the preceding allegations by reference.

66.    Defendants negligently violated the TCPA, 47 U.S.C. § 227 *et seq.* in relation to Mr. Boyer and the class members.

67.    As a result of Defendants' negligent violations of the TCPA Mr. Boyer, and the class members, may recover statutory damages of $500.00 for each and every call in violation of

the statute.

68.     Alternatively, Defendants have knowingly and willfully violated the TCPA in relation to Mr.

Boyer and the class members.

69.     As a result of Defendants' willful violations of the TCPA Mr. Boyer, and the class members,

may recover treble the statutory damages ($1,500.00) for each and every call in violation of

the statute.

<u>**COUNT II– Individual Claims Against DCI**</u><br><u>**Michigan Occupational Code ("MOC"),**</u>

70.     Mr. Boyer incorporates the preceding allegations by reference.

71.     DCI is a "collection agency" as defined by M.C.L. § 339.901(b).

72.     Mr. Boyer is a "consumer" as defined by M.C.L. § 339.901(f).

73.     DCI's actions in attempting to collect the alleged debt owed by Mr. Boyer violated the

MOC, including, but not limited to, M.C.L. § 339.915 (e), (f), (n) and (q).

74.     Mr. Boyer has suffered damages as a result of these violations of the MOC.

75.     DCI's violations of the MOC were willful.

<u>**COUNT III– Individual Claims against DCI**</u><br><u>**Michigan Collection Practices Act ("MCPA"), M.C.L. 445.251, *et seq*. as an alternative to**</u><br><u>**claims under the Michigan Occupational Code.**</u>

76.     Mr. Boyer incorporates the preceding allegations by reference.

77.     DCI is a "regulated person" as defined by M.C.L. §445.251(g)(xi).

78.     Mr. Boyer is a "consumer" or "debtor" as defined by M.C.L. § 445.251(d).

79.     DCI's actions in attempting to collect the alleged debt owed by Mr. Boyer violated the

MCPA, including, but not limited to, M.C.L. § 445.252(e), (f), (n) and (q).

80.     Mr. Boyer has suffered damages as a result of these willful violations of the MCPA.

81.     DCI's violations of the MCPA were willful.

**<u>Demand for Jury Trial</u>**

82.    Mr. Boyer demands trial by jury in this action.

**<u>Relief Requested</u>**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Classes requests judgment against Defendant as follows:

A.    Certification of the proposed Classes;

B.    Appointment of Plaintiff as representative of the Classes;

C.    Appointment of the undersigned counsel as counsel for the Classes;

D.    A declaration that Defendant and/or its affiliates, agents and/or other related entities' actions complained of herein violate the TCPA.

E.    An order enjoining Defendant and/or its affiliates, agents and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.    An award to Plaintiff, and Classes of damages, as allowed by law;

G.    An award to Plaintiff, Classes of attorneys' fees and costs, as allowed by law and/or equity;

H.    An award to Plaintiff of statutory or actual damages under the MOC,alternatively, the MCPA along with costs and attorney fees.

I.    Leave to amend this Complaint to conform to the evidence presented at trial; and

J.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

Respectfully Submitted,


By:  s/ Julie A. Petrik
Julie A. Petrik (P47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney for Kenneth Boyer
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
PHONE:  (248) 208-8864
Julie@MichiganConsumerLaw.Com

Ian B. Lyngklip
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Kenneth Boyer
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
Ian@MichiganConsumerLaw.com

Rex C. Anderson (P47068)
REX ANDERSON, PC
Attorney for Kenneth Boyer
9459 Lapeer Rd., Ste. 101
Davison, MI 48423
PHONE:  (810) 653-3300
mied@rexandersonpc.com

Dated: June 13, 2014